# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CRAIG NEAL | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PJM-10-2390 |
| MICHAEL J. STOUFFER and KENNETH D. HORNING | * | |
| | * | |
| Defendants | | |

\*\*\*

## **MEMORANDUM OPINION**

Pending is Defendants' Motion to Dismiss or for Summary Judgment. ECF No. 11. Although he was advised of his right to file a Response in Opposition to Defendants' motion and of the consequences of failing to do so, Plaintiff has not opposed the motion.

### **Background**

Plaintiff Craig Neal ("Neal") states he is incarcerated at the Maryland Correctional Training Center (MCTC) serving a ten year sentence. ECF No. 1 at p. 6.[1] Neal is not a member of a prison gang and has never been designated as such by the Division of Correction (DOC). On March 7, 2010, Neal was assaulted by two gang members at MCTC. On May 17, 2010, Neal was removed from general population and placed on administrative segregation "pending transfer to the general population of a safer institution." *Id*. Neal alleges that the decision to assign him to administrative segregation pending transfer was based on an assessment by Captain Woods. Woods, who is the head of the anti-gang task force unit, determined that a continued threat to Neal's safety existed at MCTC. *Id*.

Neal states that confinement to administrative segregation requires his confinement to an eight-foot by six-foot cell, twenty-four hours a day. ECF No. 1 at p. 5. Whenever he is removed

---
[1] Page numbers refer to ECF pagination.

from the cell he must be handcuffed behind his back. Administrative segregation inmates are prohibited from participating in substance abuse treatment, religious services attendance, educational or work assigned programs, group counseling, and using physical fitness resources. *Id*. Further, administrative segregation inmates are also deprived of the concomitant diminution of confinement credits awarded for participating in prison programming. Neal states that the restrictions placed on administrative segregation inmates are identical to those placed on inmates serving disciplinary segregation sentences.

Neal claims it is a violation of DOC policy to confine inmates to administrative segregation long-term solely for the purpose of protecting them from the violence of other inmates. Rather, Neal maintains the policy mandates that inmates who are at risk must be assigned to protective custody after an initial five-day placement. Neal alleges that, in violation of this policy, he is being held in administrative segregation arbitrarily and as an "artificial illegal substitute for protective custody status." ECF No. 1 at p. 7. It is Neal's belief that he has been denied a transfer to another prison "to spare the Parole Commission officials the inconvenience of extra paper work and effort that would be involved in bringing about [his] parole hearing in the event he is transferred elsewhere." *Id*. at p. 4. Neal seeks an injunction requiring his transfer to a "safer institution" as well as declaratory and monetary relief. ECF No. 1 at p. 8.

Defendants do not dispute that Neal was assaulted on March 7, 2010, by two inmates, one of whom was a confirmed member of the Dead Men Incorporated (DMI) gang and the other suspected to be a member of the same gang. ECF No. 11 at Ex. A, p. 4. Neal was charged with a disciplinary violation for his role in the altercation and received a 60-day disciplinary segregation sentence as a result. *Id*. at pp. 5 – 8. Upon completion of the disciplinary

2

segregation sentence, case management staff determined that Neal should be placed on administrative segregation for his safety and placed on a list for transfer to any other medium security prison.[2] *Id*. at Ex. A, p. 17 and Ex. C.

There is no policy regarding how long an inmate may be assigned to administrative segregation, but the policy requires the status to be reviewed every 30 days. *Id*. at Ex. B, pp. 2 – 3. In the event an inmate remains assigned to administrative segregation for one year, he is provided with a letter of explanation regarding why he has continued to remain so assigned. *Id*. at p. 3. Neal's assignment was reviewed every thirty days for the approximate five months he was on administrative segregation; he was then transferred to Maryland Correctional Institution at Hagerstown (MCIH), where he is currently assigned to general population. *Id*. at Ex. C.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

---

[2] Disciplinary segregation status involves separation from general population inmates and curtailment of privileges for purposes of punishing a rule violation. Administrative segregation inmates are also separated from general population inmates, but the assignment is made for various reasons including to protect an inmate who has been threatened or targeted for violence by other prisoners or gangs. ECF No. 11 at Ex. B, pp. 2 – 5.

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

It is well established that prisoners do not have a constitutional right to access programs or to demand to be housed in one prison verses another, absent a showing of significant hardship.  "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution."  *Meachum v. Fano*, 427 U.S. 215, 224 (1976), s*ee also Sandin v. Conner*, 515 U.S. 472 (1995) (requiring an atypical and significant hardship as prerequisite to creation of a constitutionally protected liberty interest).  A liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U. S. at 484.  Thus, before deciding whether Neal is entitled to due process, it must be

determined if the conditions under which he was confined constituted an atypical and significant hardship.

Lack of opportunity to earn or have applied diminution credits to secure an early release is not an atypical and significant hardship. *See Bulger v. United Sates Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995). The Constitution itself does not create a protected liberty interest in the expectation of early release on parole. *See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U. S. 1, 7 (1979); *see also Jago v. Van Curen*, 454 U. S. 14, 18 (1981) (mutually explicit understanding that inmate would be paroled does not create liberty interest). "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz*, 442 U.S. at 7.

Likewise, assignment to administrative segregation does not create an atypical and significant hardship. *See Hewitt v. Helms*, 459 U.S. 460, 103 (1983) (holding that administrative segregation is part of the ordinary incidents of prison life). More recently the Supreme Court found that conditions in a super-maximum prison where human contact and communication between cells was forbidden and exercise was limited to one hour a day in a small indoor room were not enough alone to implicate liberty interest. Rather, the duration of the confinement to the prison enforcing those conditions created a liberty interest in avoiding a transfer there. *See Wilkinson v. Austin*, 545 U.S. 209, 223 (2005). The *Wilkinson* prisoners received only annual reviews and "even inmates with exemplary behavior rarely progress[ed] through [the prison] in less than two years." *Austin v. Wilkinson*, 189 F.Supp.2d 719, 740 (N.D. Ohio 2002).

Neal was entitled to monthly status reviews which he received. While the conditions of his confinement may have been more restrictive than those he enjoyed in general population, his

assignment was a temporary measure to insure his physical safety. Neal was transferred to another prison's general population five months after he was placed on administrative segregation status, far short of the one-year assignment which would generate a letter of explanation under existing policy.[3] The Court also notes that Neal's claim regarding the convenience of the Parole Commission is not a claim that his assignment to administrative segregation adversely effected the outcome of his parole consideration hearing. Thus, he has failed to establish that he was deprived of a protected liberty interest in violation of his right to due process.

Defendants are entitled to summary judgment in their favor. A separate Order follows.


September 14, 2011 _____/s/_____
Date        PETER J. MESSITTE
            UNITED STATES DISTRICT JUDGE

---

[3] Even if there was a DOC policy requiring Neal's transfer within five-days of being assigned to administrative segregation, violation of that policy does not necessarily establish a constitutional violation.